UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL RAYMOND BALL,

                Petitioner,                        Case Number 21-13052
                                                          Honorable David M. Lawson

v.

GARY MINIARD,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      A Michigan jury convicted 55-year-old Randall Raymond Ball of aggravated stalking after he followed, harassed, and terrified a 21-year-old cosmetologist whom he met when she gave him a haircut.  After considering Ball's prior history of similar behavior and his criminal record that mandated his registry as a sex offender, the trial judge opined that "[t]his is a case . . . of hunter stalking prey," *People v. Ball*, No. 340019, 2019 WL 1265072, at *10 (Mich. Ct. App. Mar. 19, 2019), and sentenced him as a fourth felony offender to prison for 20 to 30 years.  Ball challenged his conviction and sentence on direct appeal and through post-conviction motions.  Finding no relief, he filed the present habeas corpus petition under 28 U.S.C. § 2254 without a lawyer's assistance.  Because Ball has not shown that the state courts disposed of his claims in violation of federal law, the Court will deny the petition.

I.

      The Michigan Court of Appeals summarized the facts adduced at trial in its opinion on direct appeal as follows:

      The victim, a 21-year-old cosmetologist, testified that she first met defendant in December 2016 when he entered the salon where she worked as a walk-in customer and she gave him a haircut.  Defendant returned a week later to get the haircut

"fixed," and he also returned for another haircut in January. Subsequently, defendant began contacting the victim for noncommercial purposes, including showing her photos, inviting her to accompany him to Walmart, approaching her while she was shopping, and leaving a note on the victim's car outside of the salon. The note referenced not only where the victim lived, but also the route she took home, although the victim had not shared these details with defendant. The note also encouraged the victim to call him. When her employer told the victim that there was nothing the salon could do, she contacted the police, who in turn contacted defendant at the phone number indicated in the note. Defendant subsequently admitted to each of these contacts.

Prior to trial, the trial court considered the proposed admission of other-acts evidence concerning defendant's behavior at two other similar businesses. Relevant to this appeal, the trial court permitted the prosecution to present evidence of a note that defendant left on the car of a patron at a tanning salon in 2008 after breaking into the car; however, the trial court would not allow admission of the note itself or references to the fact that it included a threat to rape the recipient. Nevertheless, in defendant's first trial, the recipient of the 2008 note testified that the note defendant left in her car was "sexually threatening." Defendant moved for a mistrial. The prosecution conceded that it believed this characterization of the note was appropriate under the trial court's order. The trial court denied defendant's motion and struck the testifying witness's entire testimony. Subsequently, the prosecution "joined" defendant's motion for a mistrial, and the trial court granted a mistrial only after defendant expressed consent to mistrial and to a retrial.

Defendant subsequently moved to bar retrial based on prosecutorial misconduct in goading defendant to seek a mistrial, but the trial court found that the prosecutor's conduct was at best negligent and denied defendant's motion. On retrial, the owner of the tanning salon testified that defendant had left a "sexually threatening" note on a patron's car. The witness admitted that it was her error. The trial court denied defendant's motion for a mistrial, instead instructing the jury to disregard the witness's response.

The jury found defendant guilty of aggravated stalking and the trial court subsequently sentenced defendant to 20 to 30 years' imprisonment.

*Ball*, 2019 WL 1265072, at *1.

At sentencing, the court observed that Ball was on parole at the time of this offense, he had been required to register as a sex offender, and had been monitored with a GPS tether, all of which

were ineffective to deter his conduct. *Id.* at *10. The court imposed an above-guideline sentence of 20 to 30 years in prison, reasoning that "the guidelines do not account for the fact that you stalked this victim relentlessly on a nearly daily basis for approximately two months." *Ibid.*

On direct appeal, Ball raised the following claims: (1) double jeopardy barred retrial, (2) insufficient evidence supported the conviction; (3) the trial court improperly admitted other acts evidence, and (4) the sentence was based on erroneously scored sentencing guidelines. The Michigan Court of Appeals affirmed Ball's conviction. *Ibid.*

Ball filed an application for leave to appeal in the Michigan Supreme Court adding these claims: (1) he received ineffective assistance of trial and appellate counsel, (2) the stalking statute is unconstitutional, (3) he did not have a prior stalking conviction and, therefore, could not be convicted of aggravated stalking, and (4) newly-discovered evidence of perjury denied him a fair trial. The Michigan Supreme Court denied leave to appeal. *People v. Ball*, 504 Mich. 997, 934 N.W.2d 239 (2019).

Ball then filed a motion for relief from judgment in the trial court, arguing that (1) he received ineffective assistance of trial and appellate counsel, (2) the aggravated stalking statute is unconstitutional, (3) his prior no contest conviction for misdemeanor stalking should not have been used to enhance his felony stalking conviction, (4) the prosecution's similar-acts witness gave conflicting testimony, (5) the prosecutor engaged in misconduct, (6) the trial judge engaged in misconduct, (7) testimony that the defendant was on a GPS tether was improperly admitted, (8) the police engaged in misconduct, (9) a lack of evidence supported the conviction, and (10) the

aggravated stalking statute violates the First Amendment.  The trial court denied the motion for relief from judgment.  Order (Jan. 30, 2020), ECF No. 7-16.

Ball's applications for leave to appeal the trial court's decision were denied by the Michigan Court of Appeals, *People v. Ball*, No. 352700 (Mich. Ct. App. Apr. 8, 2020), and Michigan Supreme Court, *People v. Ball*, 953 N.W.2d 406 (Mich. 2021).

Ball filed a second motion for relief from judgment in the trial court contending that new evidence showed that a prosecution witness gave perjured testimony.  The trial court denied the motion.  Order (Oct. 14, 2022), ECF No. 7-18.  He does not appear to have filed an application for leave to appeal the trial court's denial.

Bell then filed the pending habeas corpus petition asserting the following claims:

I.       His conviction violates the Double Jeopardy Clause of the federal constitution.

II.      He received ineffective assistance of appellate counsel.

III.     He received ineffective assistance of trial counsel.

IV.      The aggravated stalking statute, Mich. Comp. Laws § 750.411i, is unconstitutionally vague, overbroad, and violates the First Amendment's protection of free speech.

Pet., ECF No. 1, PageID.2.

The warden argues that all the habeas claims raised in Balls's application for leave to appeal to the Michigan Supreme Court and his state court motions for relief from judgment are procedurally defaulted here because Ball did not raise them on direct appeal to the Michigan Court of Appeals and did not give a good reason for not doing so.  The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court,

- 4 -

and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted).  The "holding of a Supreme Court decision is the legal rule or principle [the court the relies on] to decide a case." *Andrew v. White*, 604 U.S. ---, No. 23-6573, 2025 WL 247502, at *3 (Jan. 21, 2025) (per curiam).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)).

A.

Ball leads off his petition with the argument that his retrial violated his rights under the Double Jeopardy Clause.  He maintains that the prosecution intentionally provoked the defense into moving for a mistrial and that, after the trial court initially denied the petitioner's motion for a mistrial, the prosecution joined in the request to gain a tactical advantage.

The Michigan Court of Appeals rejected this claim because Ball consented to the mistrial. The court emphasized that the trial court asked Ball on the record whether he was requesting a mistrial and Ball "stated his express agreement to a mistrial and a retrial." *Ball*, 2019 WL 1265072 at *3.  The state court found that Ball waived any double-jeopardy arguments by consenting to a retrial.  *Ibid.*  And the court determined that the mistrial was not caused by the trial prosecutor's intentional misconduct, but only his negligence.  *Ibid.*

That decision faithfully tracked federal constitutional law.  It is well established that the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Currier v. Virginia*, 585 U.S. 493, 498 (2018), "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense," *United States v. Dinitz*, 424 U.S. 600, 606 (1976).  Once jeopardy attaches, a defendant may not be retried after a mistrial has been declared unless (1) there is a "manifest necessity" for a mistrial, or (2) the defendant either requests or consents to a mistrial.  *Id.* at 606-07.  Where a criminal defendant moves for, or agrees to, a mistrial, the "'manifest necessity' standard has no place in the application of the Double Jeopardy Clause."  *Kennedy*, 456 U.S. at 672.  Instead, when a mistrial

- 7 -

is declared at the defendant's request, re-prosecution will be barred only if the prosecutor "intended to 'goad' the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 676.

The state court record shows that before the first trial, the prosecution filed a notice of intent under Michigan Evidence Rule 404(b) to introduce evidence that Ball engaged in similar stalking behavior in 2008. Ball was said to have left a note inside a woman's car parked at a tanning salon that read, "Leave it open again and I'll rape you." ECF No. 7-3, PageID.381. Defense counsel moved to suppress the note. Following a hearing, the trial court held that the note was relevant to show the common scheme of "leaving notes for women in the beauty industry . . . designed to make them fear violence or harassment." *Ibid.* The court explained that "[t]he existence of a threatening note in the previous case is admissible, but the threat to rape the victim is, this court finds, unduly inflammatory." *Id.* at PageID.381-82. The prosecutor sought clarification:

> PROSECUTOR: On the note. Is the effect of the note being threatening admissible? Should one of the young ladies who received the note be on the stand, may they testify that it was a threatening note, without mentioning the specific threat?
>
> THE COURT: Yes. Yes. That's a good question, and it certainly was a Chinese Take-Out Menu. Yes.

*Id.* at PageID.384. (The basis for the court's reference to a "Chinese Take-Out Menu" is unclear.)

During the first trial, Michelle Hinkins testified that she was a regular customer at a tanning salon and one day Ball broke into her car. The prosecution asked, "Did he leave anything behind in your car?" ECF No. 7-7, PageID.689. She responded, "There was a sexually threatening note left in my vehicle." *Id.* at PageID.690. Defense counsel objected and asked for a mistrial. The

- 8 -

prosecutor contested the request for a mistrial arguing that the witness's testimony was consistent with the trial court's ruling.  The trial court held that the description of the note as sexually threatening violated the trial court's order.  *Id.* at PageID.694.  But the court denied the motion for mistrial and held that the error could be cured by a curative instruction directing the jury to disregard Hinkins' testimony in its entirety and by not allowing any further testimony from the witness.  *Id.* at PageID.694-95.  The prosecutor requested a continuance, which initially was denied.  Ultimately, the court allowed the prosecutor a few minutes to consult with his office.  *Id.* at PageID.698.  Following a brief recess, the prosecutor stated that the State wished to join the defense motion for mistrial.  Defense counsel indicated that the defense was still requesting a mistrial.  *Id.* at PageID.67.  The court then questioned Ball under oath and confirmed that he expressly was requesting a mistrial and that he had not been threatened or coerced to make that request.  *Id.* at PageID.68-69.  A mistrial was declared, and the second trial commenced approximately one month later.

The state appellate court's decision plainly is supported by the record.  The prosecutor was confused and expressed the belief that his questions were consistent with the trial court's evidentiary ruling.  A certain lack of precision in the trial court's evidentiary ruling regarding the note substantiates the prosecutor's claim of genuine misunderstanding.  The prosecutor's delay in joining the defense's motion for mistrial was not motivated by the desire to seek a tactical advantage.  Instead, the record clearly shows that the delay is attributable to the assistant prosecutor's request (not an unreasonable one) to consult with his office before deciding how to proceed.

The state court's holding that no double jeopardy violation occurred does not contravene and reasonably applies clearly established federal law.  The decision was not based on an unreasonable determination of the facts considering the evidence presented.  Issuance of a habeas corpus writ based on a double jeopardy violation is not warranted here.

B.

Next, Ball contends that his trial counsel rendered constitutionally ineffective assistance in 18 different instances.  The state courts were unpersuaded.  They were correct.

An ineffective assistance of counsel claim has two components.  A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness."  *Id.* at 688.  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).  And most relevant here, where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently.  *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).  And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted).  This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 1.

Ball argues that trial counsel's overall lack of preparedness and failure to meet with him before trial rendered her ineffective.  He also asserts that if counsel had been prepared, she would

have called him to testify.  He maintains that he would have had "a high likel[i]hood of acquittal" if he had testified.  ECF No. 1, PageID.34.

The record does not support those arguments.  Ball never expressed dissatisfaction with his lawyer in the trial court.  In fact, when his first trial ended in a mistrial, Ball specifically stated he would like to keep the same attorney.  ECF No. 7-7, PageID.703.  That expression suggests that he generally was satisfied with counsel's representation.  Moreover, the state court record shows multiple references to counsel consulting with Ball prior to trial.

Similarly unavailing is Ball's argument that had counsel's performance "measured up," Ball would have testified in his own defense and likely been acquitted.  ECF No. 1, PageID.34.  Ball does not mention what he would or could have said that would have swayed the jury.  He could not credibly deny the accused conduct, since he admitted to the police that he had several contacts with the victim.  And the record shows that Ball's decision not to testify was his own.  He has not made a showing of deficient performance with this argument.

2.

Ball asserts that defense counsel provided ineffective assistance during plea negotiations.  The Sixth Amendment right to counsel extends to the plea-bargaining process, and a criminal defendant is "'entitled to the effective assistance of competent counsel'" during plea negotiations.  *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  To establish prejudice in the context of a rejected plea offer, a defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that the defendant would have accepted the plea agreement, and the prosecution would not have withdrawn it

- 12 -

considering intervening circumstances.  *Id*. at 164. The defendant also must show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed.  *Ibid.*

Before the first trial, the prosecutor offered a deal whereby Ball would plead guilty to aggravated stalking and the prosecutor would reduce the habitual offender notice from fourth to second.  *See* ECF No. 7-4, PageID.390-91.  Ball declined the plea offer.  *Id.* at 391.

Ball contends that he rejected the plea offer because defense counsel advised him that "no crime had been committed" and that the prosecutor was "young and inexperienced [and] would not be able to prove his case."  ECF No. 1, PageID.34.  He argues that counsel's confidence was based on an "egregious misunderstanding" of the stalking statute.  *Ibid.*  He also says that counsel failed to inform him that accepting the plea would have dropped his maximum possible sentence to seven-and-a-half years.  *Id.* at PageID.35.  Finally, he maintains that counsel informed him that his sentencing guidelines were 12 to 48 months, causing him to believe incorrectly that he had "nothing to lose by going to trial."  *Id.* at PageID.45.

Defense counsel's misjudgment about the likelihood of acquittal does not by itself amount to deficient performance.  "[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."  *Lafler*, 566 U.S. at 174.  More importantly, the trial court record does not support the claim that counsel misunderstood the stalking statute.  She was familiar with the elements of the crime and discussed them in the context of jury instructions.

Ball's assertion that he would have accepted the plea agreement had he known it would reduce his maximum possible sentence to seven-and-a-half years is directly contradicted by the

record.  When Ball rejected the plea offer, the trial court emphasized on the record the "serious consequences" of the decision.  ECF No. 7-4, PageID.393.  The trial court explained that the plea offer would expose Ball to a maximum sentence of seven-and-a-half years whereas conviction as a fourth offense habitual offender exposed him to a potential life sentence.  *Ibid.*  Ball stated that he understood the risks involved and intended to proceed to trial.  *Id.* at PageID.393-94.

Any wrong advice about the sentencing guideline calculation is not a basis for relief here. According to Ball, counsel advised him that the guidelines range for the minimum side of the indeterminate sentence was 12 to 48 months.  In fact, his minimum guideline range was 14 to 58 months.  Counsel's prediction was very close to the actual guidelines, and her inability to predict with absolute certainty the exact minimum guideline sentence after trial did not render her ineffective.  Because guidelines are often impacted at least in part by the testimony elicited during a trial, counsel could not have pinpointed the precise guideline range.  *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (holding that a "mistaken prediction" of the sentencing guidelines range should not be characterized as ineffective assistance of counsel); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("[m]isinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel.").  Moreover, Ball has not demonstrated a reasonable probability that he would have accepted the plea offer if he had been advised of the ultimate guidelines range of 14 to 58 months.  After all, he insisted on going to trial even when confronted with the possibility of a life sentence.  One must infer that he would not have accepted a plea offer if he knew the high end of the minimum sentence was ten months longer his attorney's estimate.

- 14 -

3.

Ball argues that counsel was ineffective by failing to hire a handwriting expert to show he did not write the threatening note left on the car of Michelle Hinkins, the similar acts witness.  But he does not even give a hint that an expert witness would have testified that the handwriting in the note was not his.  Absent such a proffer, the argument is speculative and unpersuasive.

4.

Ball's next two claims concern defense counsel's general trial strategy.  He argues that counsel was deficient by failing to make an opening statement and, relatedly, failed to "formulate a trial strategy."  ECF No. 1, PageID.37.

Ball has not overcome the presumption that the decision to forego an opening statement was reasonable trial strategy.  "An attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel."  *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (quotation marks omitted).  Additionally, Ball has not demonstrated any prejudice resulting from counsel's conduct. Defense counsel presented a cogent defense theory through cross-examination and in her closing argument.  Ball has not shown a reasonable probability that the outcome at trial would have been different had counsel made an opening statement or formulated a different strategy.

5.

Next, Ball maintains that counsel failed to impeach Anna Preston (formerly Anna Lewis), another similar-acts witness, with inconsistent testimony from his first trial about whether she saw him place a note inside a customer's vehicle.  According to Ball, in the first trial, Preston testified

- 15 -

that she saw him place a note in a customer's vehicle but in the second trial she testified that she did not see him place the note in the vehicle.  In fact, the testimony was not directly contradictory.

At the first trial, Preston testified that Ball placed a note through the client's window.  When asked whether she "observed him in the parking lot at that point", she replied "yes."  ECF No. 7-7, PageID.668.  During the second trial, she testified, "I did not see him place the note in the car, but that day is the day he was out of his car."  ECF No. 7-12, PageID.1098.  The two versions may have been marginally inconsistent, but counsel did not perform deficiently by failing to home in on this detail, and Ball was not prejudiced by this decision.

6.

Next, Ball argues that counsel should have objected to the prosecution's leading questions to similar-acts witnesses Preston and Hinkins.  During her testimony, Preston referred to a note left by Ball as "sexually threatening."  ECF No. 7-12, PageID.1098.  That violated the court's directive that the note could be referred to as threatening but not as sexually threatening and to the prosecutor's pretrial directive to witnesses not to reference the sexual nature of the note.  *Id.* at PageID.1099.  Outside the presence of the jury, the trial court denied defense counsel's motion for a mistrial and discussed an appropriate curative instruction.  The prosecution also asked for permission to lead witnesses regarding the tenor of the note to avoid additional references to the note as "sexually threatening."  Defense counsel agreed that allowing leading questions on this subject was "probably the best way to handle it."  *Id.* at PageID.1107.  The trial court granted the prosecution's request.  *Ibid.*

- 16 -

Defense counsel's decision to concur with the prosecution's request to ask leading questions on the limited subject of the note's tenor was driven by the desire to avoid additional references to the note's sexually threatening nature. Counsel's strategic decision aimed at limiting the note's impact on the defense was reasonable.

7.

Ball next asserts that counsel was ineffective by failing to hire a jury expert to "seat a fair and impartial jury." ECF No. 1, PageID.40. Ball has not cited any authority, let alone Supreme Court caselaw, endorsing the view that an attorney's failure to retain a jury selection expert falls below an objective standard of reasonable representation. And Ball fails to specify how a jury expert would have assisted in the selection of a fair and impartial jury. He does not even argue that he was denied a fair and impartial jury. Ball has not shown that counsel performed deficiently in this regard or that he suffered prejudice.

8.

Next, Ball argues that counsel was ineffective by failing to acquire transcripts from his 2008 parole revocation hearing. According to him, Preston's and Hinkins' testimony at the revocation hearing differed significantly from their trial testimony. He maintains that if counsel had obtained these transcripts, she could have impeached their trial testimony. This claim suffers from the same deficiency as so many of Ball's other claims: it is unsupported by anything other than his own assertions. Ball fails to show that the prior testimony of witnesses was inconsistent with their trial testimony. He has not made even a rudimentary showing of how those prior

statements could have impacted his trial, or that defense counsel performed deficiently by not obtaining those transcripts.

9.

Ball says that his attorney performed deficiently by failing to object to the prosecutor's questions to a police deputy about the age of the victim (21) and Ball himself (55), which, he says, was intended to "enrage/inflame the jurors." ECF No. 1, PageID.28. Ball does not allege that the testimony was false, and it was relevant to whether Ball was pursuing a romantic relationship with the victim. He makes no attempt to show this testimony was inadmissible. Defense counsel was not ineffective by failing to object to the prosecutor's questions to Deputy Hansen about the victim's and the petitioner's age difference. The age difference was relevant to the State's theory of the case.

10.

Ball argues that defense counsel should have called as defense witnesses the sheriff's deputies who executed a search warrant at his home and found "no evidence." ECF No. 1, PageID.42. Ball fails to explain how that would have helped his case. The case did not rest upon any particular piece of physical evidence, the absence of which would have bolstered the defense. Ball has not shown that counsel was ineffective for failing to call these witnesses.

11.

Ball also fails to show that defense counsel's cross-examination of the victim was deficient. He maintains that counsel's "questioning was short, imprecise, questionable and very unconvincing." ECF No. 1, PageID.43. Other than expressing general dissatisfaction with

counsel's cross-examination, Ball fails to identify particular questions counsel failed to ask or specific strategies counsel failed to employ. The record shows that counsel's cross-examination of the victim was thorough and effectively highlighted inconsistencies in her testimony.

12.

Ball also contends that his attorney should have called his mother to testify for the defense. He argues that his mother would have testified that she often asked Ball to take her to the plaza where the hair salon was located and that Ball "had no malicious intent by being there." ECF No. 1, PageID.43. This argument fails for several reasons. First, it is unlikely that Ball's mother would have been allowed to testify that he had "no malicious intent." Second, other than his own conclusory assertion, Ball provides no evidence that his mother would have testified that she asked him to take her to the plaza. Finally, even assuming she would have testified in this way, her testimony would not mitigate the behavior supporting his conviction.

13.

Under Michigan law, stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause *a reasonable person* to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Mich. Comp. Laws § 750.411i(1)(e) (emphasis added). Ball argues that defense counsel was ineffective by "failing to call a 'reasonable person' to the stand" to address whether his actions would have caused those feelings. But it is generally accepted that questions about what a reasonable person would have felt are within the province of a jury. *See Wolf v. Preferred Risk Life Ins. Co.*, 728 F.2d 1304,

- 19 -

1307 (10th Cir. 1984) (holding that questions of "what a reasonable person would have done are generally within the province of the jury"); *Tomson v. Stephan*, 696 F. Supp. 1407, 1413 (D. Kan. 1988) (same). Even assuming such testimony would have been permissible, Ball fails to show that a hypothetical "reasonable person" would have testified in a manner favorable to the defense.

14.

Ball argues that counsel was ineffective by failing to request time to consult with him after the prosecution joined in the defense motion for a mistrial. The record shows that he and defense counsel conferred before counsel indicated that the defense was still requesting a mistrial. ECF No. 7-7, PageID.700. Ball did not indicate a need for further discussion with counsel when the trial court asked him whether he agreed to the mistrial. The record does not demonstrate that counsel performed deficiently or that Ball was prejudiced by counsel's performance.

15.

During deliberations, the jury submitted a note asking if the victim refused to give Ball a third haircut. ECF No. 7-12, PageID.1205. Below the question, a juror had written "copy of testimony." *Ibid.* With the consent of the parties, the jury was informed that the testimony had not yet been transcribed and doing so would take at least an hour. *Id.* at 1207-08. The court asked the jury to decide whether they would require the transcript or if they wished to proceed without the transcript. *Ibid.* The court also stated, "In the meantime, please rely on your collective memories for deliberations." *Id.* at PageID.1208. Ball argues that his attorney performed deficiently by not objecting to that response to the note.

But the trial judge followed the procedure prescribed by the Michigan court rules. Michigan Court Rule 2.513(P) relegates to the trial judge the discretion "to refuse unreasonable [jury] requests," although it "may not refuse a reasonable request." Mich. Ct. R. 2.513(P). Concerning a request for the transcript of a witness's testimony, the rule states:

> The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

*Ibid.*

Because the instruction was consistent with state court rules, counsel was not ineffective by failing to object.

16.

Ball argues that counsel was ineffective by failing to show that the victim minimized the crime in her victim impact statement and in her statement at sentencing. In fact, in both instances, the victim explained the intense terror Ball's actions caused her. Ball argues that because the victim stated, "I didn't even know this was happening to me . . .," she clearly was not terrorized or frightened at the times of Ball's contacts with her. ECF No. 1, PageID.46. However, the quote is not accurate, it is taken out of context, and it ignores the terror that the victim repeatedly expressed. Ball's attempt to minimize the impact his actions had on the victim is not well-taken and fails to show counsel was ineffective.

- 21 -

17.

Counsel also did not perform deficiently by failing to object to his sentence on the ground that it was disproportionate.  The Michigan Court of Appeals addressed the proportionality claim at length on direct appeal and held that "the trial court properly identified factors that warranted an upward departure from the guidelines minimum sentence range, the reasons for the particular departure sentence are clear, and the extent of the departure sentence satisfied the principle of proportionality."  *Ball*, 2019 WL 1265072, at *11.  Ball has not shown — or even attempted to show — that the state court's proportionality analysis was contrary to, or an unreasonable application of, Supreme Court precedent.   Therefore, he cannot show that counsel erred by failing to object.

18.

Finally, Ball argues that defense counsel was ineffective by failing to object to the admission of evidence of other acts that occurred in 2008 on the ground that it was too remote in time to have any significant probative weight.

The Michigan Court of Appeals held that this evidence was properly admitted, summarizing the earlier conduct as follows:

> [A] tanning salon worker testified that in 2008 she noticed defendant sitting in his car outside that salon more than two dozen times.  One day a note was left on a customer's car, which caused her to contact the police.  The tanning salon worker testified that she made a police report, and defendant was identified and interviewed, but never detained.  The tanning salon manager also confirmed that she was made aware of by her employees and witnessed a suspicious vehicle in the parking lot; however, she could not identify the driver.

- 22 -

The tanning salon customer testified that in July 2008, someone got into her car and left a note in it while she frequented the tanning salon.  The note was threatening in nature, and the police were called.  The assigned detective identified the driver as defendant.  At the time of his identification, defendant had a pocketknife in his possession.  An inventory search of his vehicle also revealed binoculars, handcuffs, bleach, work gloves, and two axes.
. . .
Defendant's argument essentially ignores the multiple similarities between defendant's prior conduct and the charged offense . . . .

[L]ike the present case, the 2008 incident also involved a note being left on or in a vehicle.  While the threatening message in the 2008 note was more direct, the note left for defendant's most recent victim contained threatening undertones because it suggested that defendant knew not only which vehicle the victim drove, but also where she lived and which route she took home.  In whole, the letter implied that defendant was surveilling the victim. . . . Accordingly, the trial court did not err in determining that there were sufficient similarities between the other-acts evidence and the charged offense and that the evidence was logically relevant to show that defendant operated under a common plan, scheme, or system. . . .

*Ball*, 2019 WL 1265072, at *6.

Because of the obvious relevance and probative value of testimony about the 2008 incidents, it was not unreasonable for counsel to focus on other challenges to this evidence rather than when it occurred, particularly where there is no bright-line rule beyond which an incident is considered too remote in time to be admissible.  In fact, defense counsel argued that the unfair prejudicial effect of the evidence rendered it inadmissible.  That argument did not succeed in full, but it did persuade the trial judge to exclude the threatening note from evidence.  No reasonable jurist would conclude that counsel's performance was deficient in her dealings with this evidence.

* * * * *

- 23 -

Ball has not shown that his trial attorney performed deficiently, and he has not demonstrated that he was prejudiced by his trial lawyer's representation of him.  He is not entitled to habeas corpus relief on this claim.

C.

Ball also levels several criticisms at his appellate attorney — eight to be exact.  He raised these arguments in his post-conviction motion, which the trial court denied.  That decision was not expansive.  In fact, the trial court merely observed that Ball's arguments amounted "to a list of perceived wrongs," which failed to overcome the strong presumptions that counsel rendered effective assistance.  ECF No. 7-16, PageID.1306.  Although terse, the state court's decision is entitled to deference under 28 U.S.C. § 2254, because "AEDPA deference applies to 'decision[s],' not opinions or reasoning." *Davis v. Jenkins*, 115 F.4th 545, 557 (6th Cir. 2024).  That deference "does not [even] require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Ibid.*

The legal premise for Ball's claims is clearly established.  The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  Appellate "'[c]ounsel's performance is strongly presumed to be effective.'" *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)).  A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S.

- 24 -

745, 754 (1983).  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  "To evaluate a claim of ineffective assistance of appellate counsel . . . the court must assess the strength of the claim that counsel failed to raise."  *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011).  "If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel."  *Ibid.*

As discussed below, Ball has not shown that the state courts' denial of relief on his claims that appellate counsel's performance denied him a constitutional right unreasonably applied these tenets.

### 1.

Appellate counsel filed a motion for a new trial in the trial court arguing that trial counsel was ineffective, insufficient evidence supported the conviction, and other acts evidence was improperly admitted.  Ball argues that the motion was denied because appellate counsel "failed to make a compelling argument."  (ECF No. 1, PageID.26.)  Other than this conclusory assertion, Ball fails to specify arguments that counsel could have advanced that were stronger than those asserted.  That does not even approach what is necessary to demonstrate that the state court's decision was unreasonable.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("[C]onclusory and perfunctory" claims of ineffective assistance of counsel "are insufficient to

overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief.").

2.

Moving on, Ball maintains appellate counsel was ineffective because, before filing an appellate brief, she only met with him once for forty minutes and failed to prepare for the meeting. But counsel's appellate brief shows knowledge of the procedural and factual history and a grasp of the relevant legal issues. Ball has not identified any claims that counsel should have raised on appeal, which a reasonable attorney would have raised instead of, or in addition to, those actually raised. Moreover, "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980). Nor is the Court aware of any precedent establishing a minimum number of meetings between counsel and client necessary for an attorney to provide effective assistance on appeal. *See United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988). Ball has not shown that the time counsel spent with him was inadequate or that he was prejudiced by the amount of time spent in consultation.

3.

Ball maintains that appellate counsel was ineffective by failing to argue that trial counsel rendered ineffective assistance. In support of this claim, Ball references "at least 21 separate ineffective issues" raised against trial counsel in this petition. ECF No. 1, PageID.27. To evaluate whether appellate counsel performed deficiently by failing to raise these claims, the Court must "assess the strength of the claim[s] that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). The Court, finding 18 such claims, has discussed them above and found them

- 26 -

wanting.  Because the Court concludes that the omitted claims lack merit, appellate counsel did not perform deficiently by failing to raise them.

4.

Ball argues that appellate counsel was ineffective by failing to challenge the constitutionality of the stalking statute on direct appeal.  Counsel told Ball that the issue had been decided already.  In fact, years before Ball's conviction, the Michigan Court of Appeals held that Michigan Compiled Laws § 750.411i was not overbroad and did not impinge on a defendant's right of free speech.  *See People v. White*, 212 Mich. App. 298, 536 N.W.2d 876 (1995).  Ball fails to allege any way in which his case is distinguishable from state court precedent.  Appellate counsel did not perform deficiently by failing to raise a claim already decided by the Michigan Court of Appeals.

5.

Next, Ball contends that appellate counsel should have argued that the prosecutor engaged in misconduct.  As mentioned above, Ball argues that the prosecutor improperly elicited testimony about the age of the victim and Ball's relatively older age.  But that testimony was not improper and was relevant to the State's theory of the case.

Ball also objects to the prosecutor's statement in closing argument that Ball was in the victim's salon 52 times over a three-month period.  He contends that the assertion lacked "any collaborating evidence/witnesses" and that the prosecutor "knew via [the petitioner's] P.P.O. termination hearing testimony exactly why [the petitioner] was there and what he was doing."  *Ibid.*  In fact, prosecution witness Andrew Zeeman testified that he worked for an electronic

- 27 -

monitoring service and, during the relevant time period, tracked a tether Ball wore.  ECF No. 7-10, PageID.979.  Zeeman's testimony directly supports the prosecutor's argument.  Ball also points to his own prior testimony during a personal protection order termination hearing.  He says that the prosecutor "knew via Ball's p.p.o. termination hearing testimony exactly why Ball was there & what he was doing."  ECF No. 1, PageID.28.  But the vagueness of this assertion lends nothing to further this claim.

Finally, Ball argues that the prosecutor knowingly presented perjured testimony because Anna Lewis Preston's testimony "was different" between the first and second trials.  *Ibid.*  Ball fails to cite specific testimony, and the Court will not comb through transcripts searching for evidence to support this conclusory assertion.  Moreover, "mere inconsistencies" in testimony are not enough to show that a prosecutor knowingly presented perjured testimony.  *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).  A defendant must prove that the testimony was "indisputably false."  *Id.* at 822-23.  Ball fails to carry this burden.

6.

Next, Ball argues that appellate counsel was ineffective by failing to argue on appeal that the trial court judge engaged in misconduct.  The argument fails because there is no showing that the judge did any such thing.

An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  And on habeas review, the inquiry must focus on whether the trial judge's conduct rendered the trial fundamentally unfair.  *McBee v.*

- 28 -

*Grant*, 763 F.2d 811, 818 (6th Cir. 1985).  "To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree."  *Ibid.*  Although Ball disagrees with many of the trial court's rulings, he has not shown that the judge relied on extrajudicial sources in rendering his decisions or that he showed any degree of favoritism for the prosecution or antagonism for the defense.

7.

Ball argues that appellate counsel did not allow him to review the appellate brief before it was filed and, therefore, he was "unprepared to 'add to' [appellate counsel's] filing."  ECF No.1, PageID.32.  Other than the claims raised in his habeas petition but not raised on direct appeal (which the Court has determined lack merit), Ball fails to explain what other issues he would have insisted on including in his direct appeal brief.   Unsubstantiated, conclusory allegations do not warrant habeas corpus relief.

Ball also complains that appellate counsel failed to forward the trial transcripts to him after her representation ended.  He says that placed him "at a severe disadvantage going forward with his state appeals."  *Ibid.*  Ball ultimately obtained the transcripts, although he does not specify exactly when he did so. *Ibid.*  But he does not identify any claim that he abandoned in his collateral attacks because he lacked access to the transcripts.  Nor does he explain how his lack of access impacted his ability to pursue the claims presented.  There is no reason to believe that Ball would have been able to prosecute his claims more effectively had his access to the transcripts not been delayed.

8.

Lastly, Ball argues that appellate counsel failed to make a compelling argument regarding his double jeopardy claim.  This argument is stated broadly, but Ball identifies only one specific way in which appellate counsel's argument was lacking: counsel's failure to cite *Arizona v. Washington*, 434 U.S. 497 (1978).  Ball does not explain how a specific citation of *Washington* would have strengthened his appeal, let alone yielded the reasonable probability of a different result.  In *Washington*, the Supreme Court discussed the general standards for determining whether double jeopardy bars a second trial, but these standards are well-established and discussed in countless cases.  Ball does not argue that counsel cited an incorrect standard.  In fact, in addition to citing multiple state court cases, counsel cited several Supreme Court cases setting forth the same standard, including *Oregon v. Kennedy*, 456 U.S. 667 (1982), which itself cites *Arizona v. Washington*.  Although ultimately unsuccessful, appellate counsel's argument was clearly articulated and, to the extent possible, well-supported by facts and caselaw.

\* \* \* \* \*

Ball has not shown that appellate counsel performed deficiently or that her performance prejudiced him in any way.

D.

Ball's last claim in this habeas petition is that Michigan's aggravated stalking statute is unconstitutional because it is overbroad in violation of the First Amendment.  He has not identified a Supreme Court case that supports his argument.

As mentioned above, in *People v. White*, the Michigan Court of Appeals held that the aggravated stalking statute is not overbroad and does not impinge on a defendant's right of free

speech under the United States or Michigan Constitutions.  212 Mich. App. at 309-10, 536 N.W.2d at 883.  The Sixth Circuit Court of Appeals held that the state court's decision in *White* was not contrary to or an unreasonable application of federal law.  *Staley v. Jones*, 239 F.3d 769, 787 (6th Cir. 2001) ("As the Michigan Court of Appeals recognized, the thrust of this statute is proscribing unprotected conduct. Furthermore, any effect on protected speech is marginal when weighed against the plainly legitimate sweep of the statute, and certainly does not warrant facial invalidation of the statute.").  Ball's claim, therefore, is foreclosed by circuit precedent.

### III.

Neither of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 10, 2025

- 31 -